THOMAS, J., dissenting

# SUPREME COURT OF THE UNITED STATES

## ARRIGONI ENTERPRISES, LLC *v.* TOWN OF DURHAM, CONNECTICUT, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 15–631. Decided April 25, 2016

The motion of National Federation of Independent Business Small Business Legal Center, et al. for leave to file a brief as *amici curiae* is granted. The motion of Cato Institute for leave to file a brief as *amicus curiae* is granted. The motion of Institute for Justice for leave to file a brief as *amicus curiae* is granted. The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE KENNEDY joins, dissenting from the denial of certiorari.

The question presented by this petition is whether the Court should overrule *Williamson County Regional Planning Comm'n* v. *Hamilton Bank of Johnson City*, 473 U. S. 172 (1985). In *Williamson County*, the Court ruled that a plaintiff's allegation that local government action resulted in a taking is not "ripe" for review in federal court until the plaintiff "seek[s] compensation through the procedures the State has provided for doing so." *Id.,* at 194. In doing so, the Court superimposed a state-litigation requirement on the Fifth Amendment's Takings Clause. As Members of this Court have noted, the Constitution does not appear to compel this additional step before a property owner may vindicate a Takings Clause claim. *San Remo Hotel, L. P.* v. *San Francisco*, 545 U.S. 323, 349 (2005) (Rehnquist, C. J., joined by O'Connor, KENNEDY, and THOMAS, JJ., concurring in judgment).

I would grant certiorari in this case because "the justifications for [*Williamson County*'s] state-litigation require-

ment are suspect, while its impact on takings plaintiffs is dramatic." *Id.*, at 352. That requirement appears to be inconsistent with the text and original meaning of the Fifth Amendment's Takings Clause. It has also inspired gamesmanship in the lower courts. I therefore respectfully dissent from the denial of certiorari.

I

The Takings Clause states, "[N]or shall private property be taken for public use, without just compensation." U. S. Const., Amdt. 5. In *Williamson County*, the Court reasoned that this language does not "require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." 473 U. S., at 194 (internal quotation marks omitted). This suspect reasoning led the Court to conclude that, "because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action . . . is not 'complete' until the State fails to provide adequate compensation for the taking." *Id.*, at 195. In effect, *Williamson County* forces a property owner to shoulder the burden of securing compensation *after* the local government effects a taking.

This result seems at odds with the plain text and original meaning of the Takings Clause, which appear to make just compensation a prerequisite to taking property for public use. As critics of *Williamson County* have opined, the Takings Clause is more than a mere remedy. The requirement to pay just compensation "places a condition on the [government's] exercise of" the power to take private property in the first instance. *First English Evangelical Lutheran Church of Glendale* v. *Los Angeles*, 482 U. S. 304, 314 (1987). This follows from the text's "mandate

that there shall be no taking 'without just compensation.'" Breemer, Overcoming *Williamson County*'s Troubling State Procedures Rule: How the *England* Reservation, Issue Preclusion Exceptions, and the Inadequacy Exception Open the Federal Courthouse Door to Ripe Takings Claims, 18 J. Land Use & Env. L. 209, 219 (2003). The Clause is most naturally "read to mean that compensation must accompany the taking," and not that "the claimant shall have the opportunity to ask for the compensation remedy in a post-taking court action." *Ibid.* A purported exercise of the eminent-domain power is invalid, the Fifth Amendment suggests, unless the Government pays just compensation before or at the time of its taking.

This understanding of the just-compensation requirement as a constraint on Government power appears to comport with historical understandings of the Takings Clause and its state analogues. "During the century following the ratification of the Bill of Rights and parallel state provisions, courts held that compensation must be provided at the time of the act . . . alleged to be a taking." Breemer, *supra,* at 220; see also Brauneis, The First Constitutional Tort: The Remedial Revolution in Nineteenth-Century State Just Compensation Law, 52 Vand. L. Rev. 57, 113 (1999) (same). The Court has recognized that a property owner is at least "entitled to reasonable, certain and adequate provision for obtaining compensation *before* his occupancy is disturbed." *Cherokee Nation* v. *Southern Kansas R. Co.,* 135 U. S. 641, 659 (1890) (emphasis added).

In short, both the text of the Takings Clause and historical evidence cast doubt on *Williamson County*'s treatment of just compensation as a mere remedy, rather than a condition on the Government's eminent-domain power.

## II

The trouble did not stop with *Williamson County*. In

*San Remo Hotel,* the Court exacerbated the effects of the *Williamson County* rule, and, together, the two cases have created an untenable situation for Takings Clause plaintiffs in the federal courts.

In *San Remo Hotel*, petitioners (hotel owners) challenged a city ordinance that required them to pay a conversion fee on Takings Clause grounds. 545 U. S., at 326. The petitioners first litigated their claims in state court, as *Williamson County* required them to do. After they lost, petitioners sought relief in federal court and asked the federal courts to consider the takings issues anew. 545 U. S., at 326. The District Court and Ninth Circuit, however, agreed that federal courts owed full faith and credit to the state courts' judgments, and so refused to consider the takings claims *de novo. Id.,* at 327. This Court affirmed. *Id.,* at 347.

*San Remo Hotel* dooms plaintiffs' efforts to obtain federal review of a federal constitutional claim even after the plaintiffs comply with *Williamson County*'s exhaustion requirement. The principles at work in those decisions serve as a "mechanism for keeping property owners out of federal court." Berger & Kanner, Shell Game! You Can't Get There From Here: Supreme Court Ripeness Jurisprudence in Takings Cases at Long Last Reaches the Self-parody Stage, 36 Urb. Law. 671, 687 (2004). "Once a property owner sues in state court, any attempt to follow *Williamson County*'s directive to *then* litigate the 'ripened' Fifth Amendment case in federal court is met by one or more of the preclusion doctrines and the case is summarily dismissed by giving 'full faith and credit' to the state court judgment." *Ibid.* The rules thus operate to "ensur[e] that litigants who go to state court to seek compensation [under *Williamson County*] will likely be unable later to assert their federal takings claims in federal court." *San Remo Hotel,* 545 U. S., at 351 (Rehnquist, C. J., concurring in judgment). "State courts thus get first bite at these

actions under *Williamson County*—and they get the only bite under *San Remo*." Bloom & Serkin, Suing Courts, 79 U. Chi. L. Rev. 553, 605 (2012).

Moreover, employing the rules announced in *Williamson County* and *San Remo Hotel*, clever state-government attorneys have rendered a nullity even the chance at review in *state* court. When a plaintiff files a suit in state court to exhaust his remedies as *Williamson County* instructs, state-government entities and officials may remove that suit to federal court under 28 U. S. C. §1441. Once in federal court, some state defendants have moved to dismiss on the ground that "the plaintiff did not litigate first in the state court." Berger, *supra,* at 673. And some federal judges have dismissed the claims, rather than remanding them. See, *e.g., Koscielski* v. *Minneapolis*, 435 F. 3d 898, 903 (CA8 2007) (approving of the dismissal of a removed takings claim for lack of finished state-court procedures). This gamesmanship leaves plaintiffs with *no* court in which to pursue their claims despite *Williamson County*'s assurance that property owners are guaranteed access to court at some point.

Along these lines, *Williamson County* has downgraded the protection afforded by the Takings Clause to second-class status. Plaintiffs alleging violations of other enumerated constitutional rights ordinarily may do so in federal court without first availing themselves of state court. But the same is not true for a Takings Clause plaintiff. The other "notable exception" is "for prisoner plaintiffs." Samaha, On Law's Tiebreakers, 77 U. Chi. L. Rev. 1661, 1722 (2010). We should consider overturning *Williamson County* because there is "no reason why the Takings Clause of the Fifth Amendment, as much a part of the Bill of Rights as the First Amendment or Fourth Amendment, should be relegated to the status of a poor relation." *Dolan* v. *Tigard*, 512 U. S. 374, 392 (1994).

### III

Finally, we should reconsider *Williamson County* because our attempts to ameliorate the effects of its state-litigation rule have spawned only more confusion in the lower courts. As early as 1992, the Court began to recast the state-litigation rule as a "prudential" rather than jurisdictional requirement. *Lucas* v. *South Carolina Coastal Council*, 505 U. S. 1003, 1012, and n. 3 (1992); *Suitum* v. *Tahoe Regional Planning Agency*, 520 U. S. 725, 733–734 (1997) (same). We have also explained—in no uncertain terms—that the state-litigation rule is not "jurisdictional," and have therefore determined that a plaintiff's failure to exhaust state remedies was "waived" because neither party addressed the issue. *Stop the Beach Renourishment, Inc.* v. *Florida Dept. of Environmental Protection*, 560 U. S. 702, 729 (2010); see also *Horne* v. *Department of Agriculture*, 569 U. S. ___, ___ (2013) (slip op., at 11–12) (explaining that the state-litigation rule is "not, strictly speaking, jurisdictional"); see also Crocker, Justifying a Prudential Solution to the *Williamson County* Ripeness Puzzle, 49 Ga. L. Rev. 163, 179–181 (2014) (noting that these cases have "put an end to th[e] [jurisdictional versus non-jurisdictional] debate by declaring the compensation prong non-jurisdictional and expressly endorsing the possibility of waiver or forfeiture"). Nevertheless, several Courts of Appeals continue to treat the *Williamson County* rule as a jurisdictional rule limiting the courts' power to consider federal takings claims until the plaintiffs exhaust state-law remedies. See *Marek* v. *Rhode Island*, 702 F. 3d 650, 653–654 (CA1 2012) (explaining that a federal court cannot exercise "jurisdiction" over a "takings claim" until a plaintiff pursues state remedies); *Snaza* v. *St. Paul*, 548 F. 3d 1178, 1182 (CA8 2008) (rejecting plaintiff's argument that the *Williamson County* doctrine was merely "prudential" and insisting that it was "jurisdictional"); *Busse* v. *Lee County*, 317 Fed. Appx. 968,

972 (CA11 2009) (holding that plaintiff's takings claim
was not ripe because he had not exhausted state remedies
and concluding that the District Court therefore "did not
err in finding that it lacked subject matter jurisdiction");
cf. *Perfect Puppy, Inc.* v. *East Providence*, 807 F. 3d 415,
421, n. 6 (CA1 2015) (recognizing the split). Even those
courts that have cast the state-litigation rule as "pruden-
tial" are divided over whether the rule may be waived.
Compare *Peters* v. *Clifton*, 498 F. 3d 727, 734 (CA7 2007)
(holding that "[t]he prudential character of the *Williamson*
requirements do not . . . give the lower federal courts
license to disregard them"), with *Sansotta* v. *Nags Head*,
724 F. 3d 533, 545 (CA4 2013) (courts may "determine
that in some instances, the rule should not apply"); *MHC
Financing Ltd. Partnership* v. *San Rafael*, 714 F. 3d 1118,
1130 (CA9 2013) (same). In short, the Court's efforts to
bring clarity have failed. The quagmire that the Court
has created in the lower courts is yet another reason to
grant the petition. See this Court's Rule 10(a).

\*    \*    \*

In the 30 years since the Court decided *Williamson
County*, individual Justices have expressed grave doubts
about the validity of that decision and have called for
reconsideration. This case presents the opportunity to
consider whether there are any justifications for the ahis-
torical, atextual, and anomalous state-litigation rule, and
if not, to overrule *Williamson County*. I respectfully dis-
sent from the denial of certiorari.