RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LYNN LUMBARD; ANITA YU; JOHN BOYER; MARY RAAB,

> *Plaintiffs-Appellants*,

*v.*

CITY OF ANN ARBOR,

> *Defendant-Appellee*.

┐
│
│
│
│
│
> No. 18-1258
│
│
│
│
│
┘

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-13428—Stephen J. Murphy, III, District Judge.

Argued: December 5, 2018

Decided and Filed: January 10, 2019

Before: BATCHELDER, COOK, and KETHLEDGE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Donald W. O'Brien, Jr., WOODS OVIATT GILMAN, LLP, Rochester, New York, for Appellants. Abigail Elias, CITY OF ANN ARBOR, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** Donald W. O'Brien, Jr., WOODS OVIATT GILMAN, LLP, Rochester, New York, for Appellants. Abigail Elias, Stephen K. Postema, CITY OF ANN ARBOR, Ann Arbor, Michigan, for Appellee.

BATCHELDER, J., delivered the opinion of the court in which COOK and KETHLEDGE, JJ., joined. KETHLEDGE, J. (pp. 8–10), delivered a separate concurring opinion in which COOK, J., joined.

---

**OPINION**

---

ALICE BATCHELDER, Circuit Judge.    In 2000, the City of Ann Arbor passed an ordinance requiring certain homeowners to undergo structural renovations to their homes to alleviate storm water drainage problems affecting the city and surrounding areas.  The City paid or reimbursed the homeowners for the renovations.  In 2014, the Appellants, homeowners affected by the ordinance, pursued litigation in Michigan state courts alleging that the City's actions amounted to a taking without just compensation under the Michigan Constitution.  At the outset of litigation, the Appellants filed an *England* Reservation in an attempt to preserve a federal takings claim for subsequent adjudication in federal court.  The Appellants lost in state court and then filed suit in federal court alleging causes of action under the Fifth Amendment of the United States Constitution and under 42 U.S.C. § 1983.  The federal district court dismissed the Fifth Amendment claim as issue precluded and the § 1983 action as claim precluded. We **AFFIRM**.

**I.**

The Appellants in this case are property owners in and around the City of Ann Arbor, Michigan ("City").  The houses on their properties were built between 1946 and 1973.  At the time of their construction, in accordance with City regulations, the houses were outfitted with drainage piping that emptied both storm water and sanitary sewage into a single "combined sewer system."  In 1973, the City modernized its sewer system by adding a separate sewer system exclusively for storm water.  After the completion of the new sewer system in 1973, the City passed an ordinance requiring that any new structures be built to discharge storm water to the storm sewer system and sanitary sewage to the old combined sewer system.  Existing structures were exempted from the ordinance.

The City's population continued to grow and the strain on the sewer systems came to a head in the years between 1997 and 2002.  In each of those years the City experienced several tremendous rainfall events which resulted in overflows of the old combined sewer system

including sewage overflow into public streets and the Huron River, and backups of sewage into City residents' basements. In early 2001, the City established a City Task Force and retained engineering consultants to study the problem and devise a solution. The City Task Force ultimately recommended a public works program that would disconnect the exempted homes in the older neighborhoods of the City from the old combined sewer system. The "Disconnect Program" would reroute the storm water drainage from selected homes to the storm sewer system, while maintaining the sanitary sewage outflow to the sanitary sewer system.

In August 2001, the City enacted Ordinance 32-01 ("Ordinance"). This Ordinance effectively repealed the 1973 exemption by declaring that all homeowners with pre-existing combined outflow drainage piping were in violation of City regulations. The Ordinance empowered the Director of the Utility Department ("Director") to select properties within the "Target Areas"[1] to be required to undertake the sewer work required by the Disconnect Program. Owners of selected properties had 90 days to comply, after which they would be fined $100 per month of noncompliance. All selected properties were eligible for a publicly funded installation by contractors preselected by the Director or up to $3,700 in reimbursement for an installation done by private contractors selected by the property owners.

The Disconnect Program required the excavation of a three-foot-by-four-foot sump pit in the foundation of the structure, connection of an electric pump, and the installation of piping that would send the ground water and storm water from the house to the storm water sewer nearby. This project could involve jackhammering into the foundation, penetrating walls, ripping up lawns, and hanging visible piping in and around the house through which the electric pump would pump water to the outside. After installation of the system, the homeowner would be responsible for its maintenance and operation costs. The Appellants lived in the "Target Areas," were selected for the Disconnect Program, and complied with the Program's requirements between the years of 2001–2003.

In February 2014, a group of homeowners, including Anita Yu ("Yu"), filed a complaint in Michigan state court against the City, alleging violation of the Michigan Constitution for a

---

[1]The "target areas" were the older neighborhoods of the City that were built prior to construction of the storm water sewer system.

taking without just compensation (inverse condemnation) by a physical, permanent occupation of her property for a public purpose. The City removed the case to federal district court and Yu moved to remand to state court on the basis that her federal claims were unripe pursuant to the *Williamson* exhaustion doctrine. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). The federal district court agreed and remanded the case to state court. Yu then filed a Notice of *England* Reservation informing the state court that she wanted to litigate only the state claims. *See England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964). After discovery, the state court granted the City's motion to dismiss, finding that Yu owned the installation from the Disconnect Program and that the "issue of ownership . . . falls squarely on point" as dispositive in deciding the claim under Michigan takings law.

In October 2015, a group of similarly situated homeowners, the Lumbard plaintiffs ("Lumbard"), filed a complaint against the City in Michigan state court alleging identical state-law claims. Lumbard also attempted to preserve federal claims by filing a Notice of *England* Reservation with the court. The Michigan state court found that the legal issues were the same as those in the Yu case and granted the City's motion to dismiss.

In September 2016, the court consolidated the Yu and Lumbard cases for appeal in the Michigan Court of Appeals. The court found that Yu and Lumbard did not contest that they owned the installations, so the only question was whether, as a matter of law, a takings challenge for physical invasion[2] could occur if the homeowners owned the installations. Noting that the "[Michigan] Takings Clause is 'substantially similar' to its federal counterpart," the court applied Supreme Court takings caselaw, namely *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982). *Yu v. City of Ann Arbor*, No. 331501, 2017 WL 1927846, 4 (Mich. Ct. App. May 9, 2017). The Michigan Court of Appeals found that "a permanent physical occupation does not occur so long as the owner can exercise the rights of ownership over the installation," and affirmed both trial court decisions. *Id.*

---

[2]The Michigan Court of Appeals noted that Plaintiffs did not allege a regulatory taking, but a "physical invasion" taking theory.

In October 2017, Yu and Lumbard filed a complaint against the City in the United States District Court for the Eastern District of Michigan alleging several "causes of action" arising under the Fifth Amendment of the United States Constitution and 42 U.S.C. § 1983. The City moved to dismiss asserting that the claims were barred by issue and claim preclusion or, in the alternative, time-barred.  The district court issued an opinion and order granting the City's motion to dismiss, holding that the Fifth Amendment takings claim was barred by issue preclusion and the § 1983 claim was barred by claim preclusion.

## II.

We review de novo an order dismissing for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018).  While the district court succinctly and ably applied the labyrinth of federal takings caselaw in its decision to grant summary judgment, the Appellants raise several arguments that we address explicitly.

First, the Appellants argue that *Williamson*, *supra*, is a jurisdictional bar to adjudication in federal court and thus they were forced to seek remand of their action to state court.  But in *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702, 729 (2010), the Supreme Court considered two objections from the state agency, one of which was based on *Williamson*, for not having first "sought just compensation," and the Court dismissed the objections saying, "[n]either objection appeared in the briefs in opposition to the petition for writ of certiorari, and since neither is jurisdictional, we deem both waived." *Id*. The Court has also held that "[n]onjurisdictional defects of this sort should be brought to our attention no later than in respondent's brief in opposition to the petition for certiorari; if not, we consider it within our discretion to deem the defect waived." *Oklahoma City v. Tuttle*, 471 U.S. 808, 815–816 (1985).  The Appellants urge that because *Stop the Beach* began in federal court, and thus was never removed, it does not apply to cases such as theirs which were initially removed to federal court.  We disagree.  The procedural posture of removal and remand neither strips nor grants subject-matter jurisdiction.  Indeed, this court has already affirmed that the exhaustion requirement of *Williamson* is waivable, *see Lilly Inv. v. City of Rochester*, 674 F.

App'x 523, 531 (6th Cir. 2017),[3] as have our sister circuits in the years since *Stop the Beach*. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 544 (4th Cir. 2013); *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014). Because *Williamson* is a waivable defense for state defendants, and it was the City that removed this case to federal court, the Appellants could have litigated their claims in federal court. By moving to remand to state court, they waived that opportunity.

Second, the Appellants spend considerable time urging that *England* Reservations are available absent a *Pullman* abstention order, such as when litigants are forced into state court under *Williamson*. The Appellants cite our decision in *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511 (6th Cir. 2004), as an example of our upholding *England* Reservations in a nearly identical factual situation. But even if that is true, that language is dicta; the decision in *DLX* affirmed dismissal of the claim based on Eleventh Amendment Immunity, regardless of the DLX plaintiff's *England* Reservation. *DLX*, 381 F.3d at 528.[4] In any event, we need not take a position on the outer limit of an *England* Reservation's effect outside of *Pullman* abstention because our doing so would have no impact on our holding here.

Third, the Appellants argue that our opinion in *DLX* means that, in the Sixth Circuit, claims properly reserved under *England* are not subject to claim preclusion when litigants are involuntarily forced into state court under *Williamson*. On this point, the Appellants correctly characterize our ruling in *DLX*. However, the Supreme Court in *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005), clearly overruled this circuit, along with others, with respect to our *DLX* claim-preclusion exemption. *San Remo*, 545 U.S. at 345 (overruling *Santini v. Conn. Haz. Waste Mgmt. Serv.*, 342 F.3d 118 (2d Cir. 2003)). The *San Remo* court held that there are no judicial exceptions to the Full Faith and Credit Statute, 28 U.S.C. § 1738, "simply to guarantee that all takings plaintiffs can have their day in federal court." *Id*. at 339. "Even when the plaintiff's resort to state court is involuntary . . . we have held that Congress must clearly manifest its intent to depart from § 1738." *Id*. at 345 (internal

---

[3]This holding post-dates the Appellants' initiating their litigation in federal district court.

[4]The separate opinion of Judge Baldock concurring only in the judgment seems to most accurately reflect where these tangled legal doctrines have ended up. *DLX*, 381 F.3d at 528–34 (Baldock, J., concurring).

quotation marks omitted).  When § 1738 applies to a state court decision, both issue preclusion and claim preclusion apply.  "This statute has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'"  *Id*. at 336 (citing *Allen v. McCurry*, 449 U.S. 90, 94–96 (1980)).  The preclusion doctrines under § 1738 apply to subsequent litigation in federal court to the same extent that they would in the state courts in which the judgment was rendered.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Here, the district court applied Michigan preclusion doctrines to find that the federal takings claim under the Fifth Amendment was issue precluded and the § 1983 claim was claim precluded.

It is important to point out that while the district court, relying on Michigan law, found the subject matter of the Takings Clause of the Michigan Constitution and Takings Clause of the Fifth Amendment of the United States Constitution to be the same, such a finding is irrelevant to the ultimate disposition of the case.  If the takings jurisprudence of the two constitutions is "coextensive" (to use the language of the *San Remo* court), then issue preclusion bars subsequent litigation of the federal takings claim after litigation of the state takings claim on the merits.  If the takings jurisprudence of the two constitutions is not "coextensive," then claim preclusion bars subsequent litigation of the federal takings claim because it should have been brought with the state claim in the first instance in the Michigan court.  Because in either event the Appellants' federal takings claim is precluded, we decline to opine on the "coextensiveness" of Michigan's Taking Clause jurisprudence.

### III.

Appellants are precluded by the Full Faith and Credit Statute, 28 U.S.C. § 1738, from litigating these claims in federal court.  We **AFFIRM**.

––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––

KETHLEDGE, Circuit Judge, concurring.    To find a good illustration of the law of unintended consequences, one need look no further than the Supreme Court's decision in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).   The Court's actual holding was pedestrian:   that Hamilton Bank's takings claim was unripe because the bank had not exhausted its administrative remedies, specifically its right to ask the County for a variance to develop the property in the manner proposed.   *Id.* at 193-94.   In dictum, however—dictum in the sense that the Court's pronouncement was at that point unnecessary to its decision—the Court went on to say that the bank's claim was "not yet ripe" for a "second reason[.]"   *Id*. at 194.   That reason too was couched in terms of exhaustion:   that under state law "a property owner may bring an inverse condemnation action to obtain just compensation for an alleged taking of property"; and that, until the bank "has utilized that procedure, its takings claim is premature."   *Id*. at 196-97.   The Court's implicit assurance, of course, was that once a plaintiff checks these boxes, it can bring its takings claim back to federal court.

That assurance has proved illusory, as the plaintiffs in this case are only the latest to learn.   For *Williamson County* seemed to overlook that, unlike a state or local body in an administrative proceeding, state courts issue *judgments*.   And state-court judgments are things to which the federal courts owe "full faith and credit[.]"   28 U.S.C. § 1738; *see also* U.S. Const. art. IV, § 1.   That obligation means that takings claims litigated in state court cannot be relitigated in federal.   *See San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 337-38 (2005).   Thus—by all appearances inadvertently—*Williamson County* "all but guarantees that claimants will be unable to utilize the federal courts to enforce the Fifth Amendment's just compensation guarantee" against state and local governments.   *Id*. at 351 (Rehnquist, C.J., concurring in the judgment).

Yet *Williamson County* has its defenders, notably state and local governments, who say that, if a state's procedure for providing "just compensation" happens to be a lawsuit in state

court, an aggrieved property owner should be obligated to seek compensation there. The problem with that argument (apart from the catch-22 described above) is its premise: that, taking or not, the property owner cannot show a denial of "just compensation" until the state courts deny relief. But the Takings Clause does not say that private property shall not "be taken for public use, without just compensation, and without remedy in state court." Instead the Clause says that private property shall not "be taken for public use, without just compensation" *period*. U.S. Const. Amend. V. And that plainly means that, if the taking has happened and the compensation has not, the property owner *already* has a constitutional entitlement to relief. *See Arrigoni Enterprises, LLC v. Town of Durham, Conn.*, 136 S.Ct. 1409, 1409-10 (2016) (Thomas, J., dissenting from denial of certiorari). Whether a local planning commission or the state courts have recognized that entitlement is beside the point for purposes of whether the constitutional entitlement exists. That is why pre-judgment interest on a federal takings claim runs from the date the property was taken, not from some later date on which a state court denied relief. *See, e.g.*, *Phelps v. United States*, 274 U.S. 341, 344 (1927).

*Williamson County* thus turns away from federal court constitutional claimants who have every right to seek relief there. And in doing so *Williamson County* leaves those claimants without any federal forum at all. *Williamson County* itself did not foresee that result, and thus offered no justification for it. Nor has any later case explained why takings claims should be singled out for such disfavored treatment. And meanwhile, as this case and others illustrate, *Williamson County* has left the lower federal courts with plenty to do in cases where plaintiffs seek to assert federal takings claims against state or local defendants. Rather than actually adjudicate those claims, however, we adjudicate federal-court esoterica: things like *Pullman* abstention, the scope of state jurisdictional and venue provisions, the efficacy of so-called "*England* reservations," and whether state law disfavors the adjudication of federal takings claims in violation of *Haywood v. Drown*, 556 U.S. 729 (2009). *See, e.g.*, *Wayside Church v. Van Buren County*, 847 F.3d 812, 818-22 (6th Cir. 2017); *id.* at 823-25 (dissenting opinion).

As to *Haywood*, in particular, "[o]ne further irony remains." *Id.* at 825 (dissenting opinion). There, the Supreme Court held that state jurisdictional statutes that discriminate against "disfavored federal claim[s]" are invalid under the Supremacy Clause. 556 U.S. at 738-

39.  But so far as disfavored federal claims are concerned, the federal courts should consider their own advice:  for "if anyone has undermined the adjudication of federal takings claims against states and local governments, it is the federal courts—by the application of *Williamson County*."  *Id*. at 825 (dissenting opinion).

Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction that Congress has given them.  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).  Congress has given us jurisdiction to hear these takings claims.  Our constitutional order would be better served, I respectfully suggest, if we simply adjudicated them.