**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0271n.06

Case No. 18-3962

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 24, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WCI, INC., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| OHIO DEPARTMENT OF PUBLIC | ) | THE SOUTHERN DISTRICT OF |
| SAFETY; OHIO LIQUOR CONTROL | ) | OHIO |
| COMMISSION, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: BOGGS, BATCHELDER, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** WCI, Inc., ("WCI"), an Ohio strip-club owner that holds an Ohio Liquor License, sought declaratory and injunctive relief to prevent the Ohio Liquor Control Commission ("Commission") and the Ohio Department of Public Safety ("Department") from imposing and enforcing a fine against WCI. This fine arose as a result of nude dancing that occurred at WCI's establishment in contravention of Ohio law and liquor-control regulations. WCI argues that the fine violates the United States Constitution because it retaliated against WCI's expressive speech, because Ohio offered inadequate procedural safeguards, because WCI was discriminated against for operating a strip club, and because the fine is excessive.

The United States District Court for the Southern District of Ohio dismissed WCI's lawsuit for failure to state a claim upon which relief can be granted. Although the district court was correct

in dismissing WCI's free speech and equal protection claims, it erred in dismissing WCI's due-process and Eighth Amendment excessive-fine claims, which merit further analysis. Therefore, we **AFFIRM** in part and **REVERSE** in part the decision of the district court and **REMAND** the remaining counts of the complaint for further consideration.

## I.  BACKGROUND

The relevant facts are not in dispute.

WCI operates a strip club known as "Cheeks" in West Carrollton, Ohio.  On March 8, 2014, undercover agents of the Department visited Cheeks.  A female dancer offered an agent a private lap dance.  The agent accepted, and the dancer took him into a private room, where she proceeded to give him a fully nude lap dance.  Subsequently, the dancer was cited for a violation of Ohio Revised Code § 2907.40(C)(2), which prohibits nude dancers from physically touching patrons.  She later pled no contest to an amended charge of disorderly conduct, resulting in a conviction and a sentence of thirty days in jail, one-year reporting probation, and $1,000 in fines and costs.  WCI was cited for, and found in violation of, Ohio Administrative Code § 4301:1-1-52 ("Rule 52"), which prohibits nude dancing at an establishment with a liquor license.

On August 20, 2015, the Commission issued an order revoking WCI's liquor license, but gave WCI the option to pay a $25,000 fine in lieu of revocation.  WCI moved for reconsideration of the order, which motion the Commission denied.  WCI unsuccessfully appealed the order within the Ohio court system.  The Franklin County Court of Common Pleas and the Ohio Court of Appeals both affirmed the order, and the Supreme Court of Ohio declined to grant plenary review.

WCI filed this suit in the district court, alleging constitutional violations and seeking declaratory and injunctive relief against the Commission and the Department.  In its complaint, WCI claimed to have preserved its right to plenary adjudication of these issues in federal court

2

pursuant to *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964). The defendants did not answer the complaint or specifically deny the *England* reservation claim, but instead moved to dismiss the complaint for failure to state a claim upon which relief could be granted.

For purposes of this appeal, we assume without deciding that WCI properly invoked its *England* reservation, but we recognize that this question might warrant further analysis on remand. *See id.* at 418–19 ("But we see no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in the District Court."); *Trafalgar Corp. v. Miami Cty. Bd. of Comm'rs*, 519 F.3d 285, 288 (6th Cir. 2008) ("Furthermore, because [the plaintiff] asserted federal issues in its complaint at the state court level, it cannot now claim to have reserved its federal causes of action for subsequent litigation in federal court under . . . *England*[.]"); *see also Lumbard v. City of Ann Arbor*, 913 F.3d 585, 589–90 (6th Cir. 2019) (recognizing *England* limitations).

WCI's federal complaint asserts eight counts based on the Commission's application of Rule 52: a First Amendment violation (Count I); an Equal Protection violation (Count II); arbitrary and capricious action (Count III); an unconstitutional taking (Count IV); inadequate procedural safeguards (Count V); "improper purpose and . . . discriminatory animus [because the Commission's] customs and practices [are] not content-neutral and [are] not unrelated to the suppression of free speech" (Count VI); unconstitutional "unbridled discretion" that Ohio law vests in the Commission (Count VII); and an Eighth Amendment excessive-fines violation (Count VIII). R. 1, PageID 17–19. Of note, in each of these counts, WCI does not assert that Rule 52 is itself unconstitutional; instead, WCI argues that the constitutional violations arise from the

Commission's "unbridled discretion" in executing Rule 52. We review below the district court's dismissal of all of these claims.

## II. DISCUSSION

Our review of a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) is de novo. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012). For a complaint to survive a Rule 12(b)(6) motion, the plaintiff must "allege[] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). We read the complaint "in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).

### A. First Amendment (Counts I and VI)

Rule 52 prohibits holders of Ohio liquor licenses from engaging in or allowing employees or agents of the holder to engage in certain activities, including "[a]ppear[ing] in a state of nudity," "[e]ngag[ing] in sexual activity," and "[c]omit[ting] public indecency." Ohio Administrative Code § 4301:1-1-52(B)(2)–(4). As noted, WCI does not contest the constitutionality of Rule 52 itself and instead argues that the "unbridled discretion" of the Commission in enforcing Rule 52 "manifests an improper purpose and evinces a discriminatory animus" which "abridges and restrains [WCI's] right to free expression." R.1, PageID 17–19. To prove this claim, which is essentially a claim of retaliation against WCI for its protected speech, WCI must show: "(1) the

4

plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 631 (6th Cir. 2013) (quoting *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012)).

The first question, then, is whether WCI engaged in "constitutionally protected conduct." *Id.* WCI, in its appellate brief, slightly alters this standard to assert that it must show it engaged in "constitutionally protected speech." Appellant Br. at 12. This subtle but crucial distinction goes to the heart of the matter. Although nude dancing "falls only within the outer ambit of the First Amendment's protection," *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000), we would nonetheless treat it as protected speech. However, here, WCI was not sanctioned for engaging in nude dancing, but for serving alcohol while also allowing individuals to engage in nude dancing on the same premises. Thus, the issue is not whether nude dancing is constitutionally protected, but whether the service of alcohol in the presence of nude dancing is constitutionally protected. It is not.

This court has already determined that "Rule 52 is a constitutional, content-neutral regulation of the undesirable secondary effects . . . associated with nude dancing in an environment serving alcohol." *J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 382 (6th Cir. 2008). Thus, although WCI argues that it is not challenging Rule 52 itself but only the enforcement of Rule 52 by the Commission, WCI cannot succeed. Under *J.L. Spoons*, the prohibition of Rule 52 on the combination of alcohol service with nude dancing is constitutional. Therefore, WCI's violation of this rule by serving alcohol was not constitutionally protected conduct. Even if WCI could prove all of its factual allegations, it cannot show First Amendment protection for its conduct and

therefore cannot show unconstitutional retaliation. Thus, WCI's First Amendment claims must fail, and we **AFFIRM** the district court in dismissing Counts I and VI.

## B. Equal Protection (Count II)

In Count II, WCI alleges that the "continued exercise of unbridled discretion in the imposition of penalties on 'Gentlemen's Clubs,' . . . denies equal protection of the law and allows for arbitrary, oppressive, and discriminatorily based sanctions." R.1, PageID 17. "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 278 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)).

Only four paragraphs in WCI's complaint could be construed as making the necessary allegations to clear the threshold of alleging disparate treatment. In the introductory statement of the complaint, WCI states:

> The Ohio Liquor Control Commission, in dealing with the administration of alleged violations of the state liquor laws allegedly committed within the confines of "Gentlemen's Clubs," has a custom and practice of imposing enormous and disproportionate fines, or, in the alternative, calling for the revocation of an applicable permit holder's liquor permit, thus reflecting a discriminatory animus which is content based, violates an affected permit holder's constitutional rights to due process and equal protection under law, and manifests a violation of the permit holder's First Amendment rights.

R. 1, PageID 1. Additionally, paragraphs 55–56 of the complaint state:

> 55. It is the custom and practice of the Liquor Control Commission to consistently impose extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters brought before the Commission that involve alleged violations of Rule 52, involving "Gentlemen's Clubs."

> 56. The conduct of the Liquor Control Commission, in imposing the sanctions on WCI described above ($25,000 or revocation), is an example of the Commission's custom and practice of consistently imposing extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters brought before

the Commission that involve alleged violations of Rule 52, involving "Gentlemen's Clubs."

*Id.* at PageID 14. Finally, paragraph 70 states:

> COUNT II
> 70. The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiffs by the United States Constitution, on its face and as applied, in that it denies equal protection of the law and allows for arbitrary, oppressive, and discriminatorily based sanctions, which unreasonably requires the Plaintiff to submit to controls not imposed on other commercial permit holders.

*Id.* at PageID 17.

These paragraphs are insufficient under the *Iqbal* standard to allege disparate treatment. *Iqbal* calls for dismissal of "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. In the equal protection context, a "[c]omplaint [that] fails to make a plausible allegation that similarly situated organizations and individuals . . . have not been subject to the same alleged treatment by Defendants" has not met the *Iqbal* standard. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Where "[t]he allegations contained in the . . . [c]omplaint as to disparate treatment amount to conclusory and unadorned assertions that, consequently, are not well-pleaded," they are "not entitled to a presumption of truth at this stage in the litigation." *Id.*

Here, WCI's allegations of an equal-protection violation can only be fairly read as "conclusory and unadorned assertions." WCI argues that its reference to "other commercial permit holders who are treated differently" suffices to constitute a well-pleaded factual allegation. Appellant Br. at 13–14. However, the Commission's disparate treatment of WCI vis-à-vis other commercial permit holders is a required element of WCI's claim. "[A] formulaic recitation of the elements of a cause of action will not do . . . [and] courts 'are not bound to accept as true a legal

7

conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The district court noted that WCI "has not identified who the other commercial permit holders are who are treated differently." R. 9, PageID 103. WCI argues on appeal that "[t]here is no requirement that, in its complaint, WCI has to name specifically the identities of the 'other commercial permit holders' included in the complaint." Appellant Br. at 14. WCI is correct that it need not allege specific granular details of the Commission's alleged disparate treatment of strip clubs to prevail, but beyond asserting a required legal element of its claim "couched as a factual assertion," WCI has made no plausible factual allegations. There is no allegation as to the class or type of commercial permit holders or how they were treated differently. Because the district court was not required to accept as true WCI's legal conclusions, and the facts as WCI has alleged them do not support WCI's claims, it was not error to dismiss this count.

Further, even if WCI had made sufficient factual allegations to support a showing of disparate treatment, its claim would nonetheless fail. Once a plaintiff shows disparate treatment, the next step of equal protection analysis is determining which level of scrutiny to apply. If the government decision-maker neither impaired a fundamental right nor discriminated against a suspect or semi-suspect class, the appropriate analysis of the government action is rational-basis review. *Ondo v. City of Cleveland*, 795 F.3d 597, 608 (6th Cir. 2015). As noted above, because nude dancing on the same premises that serves alcohol is not protected speech under the First Amendment, but regulable conduct, this case presents no allegation of impairment of a fundamental right nor discrimination against a suspect or semi-suspect class. Therefore, rational-basis review is appropriate here.

8

Under rational basis review, "the burden is on the challenger to show that the government's action is not rationally related to any legitimate public interest." *Id.* We will not invalidate a law or regulation if it is rationally related to a legitimate purpose. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 694 (6th Cir. 2014). "There is a strong presumption of constitutionality and the regulation will be upheld so long as its goal is permissible and the means by which it is designed to achieve that goal are rational." *Id.* To invalidate a law under rational basis review, the court would have to conclude that "government action . . . 'is so unrelated to the achievement of any combination of legitimate purposes . . . that the government's actions were irrational.'" *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). Additionally, under rational-basis review, the state's actions are "presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Liberty Coins*, 748 F.3d at 694 (quoting *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005)).

WCI asserted in its complaint that the Commission imposed penalties against WCI based on "discriminatory animus." R. 1, PageID 1. This argument implies that the Commission has an illicit intent in regulating WCI: that of restricting or banning WCI's expressive speech. However, as we have already determined, it is not WCI's speech (nude dancing) that is being restricted here, but the sale of alcohol on premises that also features nude dancing. Ohio "enjoy[s] broad power under § 2 of the Twenty-first Amendment to regulate the . . . use of intoxicating liquor within [its] borders." *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 712 (1984). Further, Ohio has wide authority to regulate the "undesirable secondary effects . . . associated with nude dancing in an environment serving alcohol." *J.L. Spoons*, 538 F.3d at 382. This is not a case where WCI's marginally protected right to free expression via nude dancing is being threatened, but rather a

case where WCI's unprotected privilege of serving alcohol while engaging in nude dance is being regulated. Given Ohio's interests in these areas, even if WCI properly alleged—and even if WCI could prove—that it was being treated with "discriminatory animus," it would not show that the Commission lacked a rational basis for its actions. Therefore, we **AFFIRM** the decision of the district court in dismissing WCI's equal-protection claim.

### C. Due Process (Counts III, IV, V, and VII)

WCI also argues that the "unbridled discretion" of the Commission to enforce Rule 52 is arbitrary and capricious, constitutes an unconstitutional taking, lacks sufficient procedural safeguards, and grants "unbridled discretion" to the Commission, respectively. R. 1, PageID 17–18. The district court dismissed these counts on the grounds that an Ohio liquor license does not create any property interest for the licensee. R. 9, PageID 103–104. The district court cited Ohio case law for the proposition that a liquor license holder has no property interest in the liquor license. Here, we must depart from the logic of the district court. It is true that Ohio courts have held that liquor licenses do not convey any property interest. However, "we emphasize that we do not rely on the labels that a state gives to the interests it has created." *Brookpark Entm't, Inc. v. Taft*, 951 F.2d 710, 715 (6th Cir. 1991). Further, our case law unequivocally shows that the "holder of an Ohio liquor license has a property interest protected under the Due Process Clause." *Id.* at 716.

To prevail on a claimed due-process violation, plaintiffs must show three elements: "(1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019). Because WCI has a property interest in its liquor license, it has properly alleged the first element, contrary to the

decision of the district court. Further, there is no dispute between the parties that WCI was required to either pay a fine or lose its liquor license. Thus, the deprivation itself is properly alleged. The only outstanding element in this litigation is whether Ohio provided WCI with sufficient procedural protections.

In determining whether there has been adequate procedure, the Supreme Court has given us three factors to examine:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The first factor—the private interest at stake—is clear: WCI's business will be severely curtailed, possibly even ruined, if it loses its liquor license. The latter two factors, however, warrant further investigation. The district court did not examine these issues, and neither party has adequately briefed them for this court to come to a resolution. "It is the general rule that a federal appellate court does not consider an issue not passed upon below." *Jackson v. City of Cleveland*, Nos. 17-3840, 17-3843, 2019 WL 2171462, at *10 (6th Cir. May 20, 2019) (quoting *Lindsay v. Yates*, 498 F.3d 434, 441 (6th Cir. 2007)). Therefore, we **REVERSE AND REMAND** the decision of the district court regarding WCI's due process claims.

On remand, the district court is instructed that WCI has a property interest in its Ohio liquor license. The district court must consider, under the framework of *Mathews*, whether Ohio provided sufficient procedural protection to satisfy the requirements of the Due Process Clause.

11

### D. Eighth Amendment (Count VIII)

Finally, we consider WCI's claims regarding Eighth Amendment excessive fine violations. In its complaint, WCI maintains that "the penalties imposed by Defendants are grossly disproportionate and allow[] the imposition of an excessive fine, in violation of the Eighth Amendment." R. 1, PageID 19.

The question before us is whether the civil penalties that were imposed by the Commission against WCI constitute an excessive fine. The district court applied Ohio state courts' interpretation of the Eighth Amendment for the proposition that this federal constitutional guarantee was simply not applicable to WCI, and in so doing, never examined whether the penalties were constitutionally excessive. The district court relied uncritically upon a statement of the Ohio Court of Appeals that "[s]uspension and revocation of state-issued permits generally are remedial measures and not 'punishment' subject to the protections of the Eighth Amendment." *WCI, Inc. v. Ohio State Liquor Control Comm'n*, 68 N.E.3d 250, 256 (Ohio Ct. App. 2016) (quoting *Four Horsemen, Inc. v. Ohio Liquor Comm'n*, No. 97APE05-612, 1997 WL 578774, at *1 (Ohio Ct. App. Sept. 16, 1997)). However, whether a fine against the holder of a liquor license is limited by the protections of the Eighth Amendment is an unsettled area of law. Although decisions of state courts interpreting the Federal Constitution may be persuasive, they are not binding upon federal courts. *See Martin v. Hunter's Lessee*, 14 U.S. 304, 347–48 (1816).

Under *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019), the Eighth Amendment's protections against excessive fines are equally applicable against state governments as against the federal government. Additionally, in the federal constitutional regime, "[t]he Eighth Amendment protects against excessive civil fines, including forfeitures." *Hudson v. United States*, 522 U.S. 93, 103 (1997). The question is not whether a fine is criminal or civil, but whether the fine is intended as

punishment. If the fine is intended as a punishment—even if only intended partially as a punishment, and partially for other reasons—the protections of the Eighth Amendment apply. "[S]anctions frequently serve more than one purpose. We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish." *Austin v. United States*, 509 U.S. 602, 610 (1993).

To determine if the Eighth Amendment applies to the fine that the Commission levied against WCI, we must first consider, as a threshold matter, whether the fines are punitive or remedial in nature. If the fines are punitive and therefore the Eighth Amendment applies, we must then determine the merits of the question; that is, whether the fine was actually excessive.

To answer the first question—whether a fine is remedial or punitive—we ask whether the fine "constitutes 'payment to a sovereign as punishment for some offense.'" *Id.* at 622 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). Here, Appellees' arguments on appeal amount to a concession of this question. Appellees assert that "WCI just does not like the penalty imposed for their recurring misconduct." Appellee Br. at 16. It cannot reasonably be argued that a "penalty for . . . misconduct" is distinguishable from "punishment for some offense." Therefore, we hold that the fine levied against WCI was punitive in nature and that the Eighth Amendment applies. However, the merits of the Eighth Amendment claim were neither decided below nor briefed before us. Once again, where this issue was not resolved below, we will not pass upon it for the first time here. *Jackson*, 2019 WL 2171462, at *10. Thus, as to the question of whether the Commission's fines were excessive in violation of the Eighth Amendment, we **REVERSE AND REMAND**.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED IN PART AND REVERSED IN PART**. We **AFFIRM** the district court's decision as to Counts I, II, and VI of WCI's complaint. We **REVERSE AND REMAND** the district court's decision as to Counts III, IV, V, VII, and VIII, for further proceedings consistent with this opinion.